REGER RIZZO & DARNALL, LLP
By: MICHAEL J. NEEDLEMAN, ESQUIRE
IDENTIFICATION NO. 88253
The Cira Centre, 13th Floor
2929 Arch St., Philadelphia, PA  19104
Phone: (215) 495-6500
mneedleman@regerlaw.com

---

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY M121193975 | : : : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | Case No.: 2:21-cv-1244 |
| | : | |
| ROCKWELL TACTICAL GROUP, LLC, JARED ROSS, CODY SAYLOR, PRIMAL DEFENSE TRAINING, LLC, NATHAN MURR, JOSHUA PRINCE, DARIN McMAHON, TIFFANY McMAHON, and SEAN McMAHON, | : : : : : : | |
| Defendants. | : | |

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, those Certain Underwriters at Lloyd's, London subscribing to insurance policy bearing coverage number M121193975 ("Underwriters"), by and through their attorneys, and for their Complaint for Declaratory Judgment against defendants, allege as follows:

## INTRODUCTION

1.       This is an insurance coverage action pursuant to 28 U.S.C. § 2201 in which Underwriters seek a judicial determination that no insurance coverage exists under the above-referenced firearm instructor liability insurance policy issued to Defendant Rockwell Tactical Group, LLC, in connection with an underlying action styled *Darin and Tiffany McMahon, et al., v. Rockwell Tactical Group, LLC*, *et al.*, Case 5:20-cv-01083-JMG, pending in the U.S. District Court for the Eastern District of Pennsylvania ("Underlying Action"). A true and correct copy of

1

the Second Amended Complaint filed in the Underlying Action ("Underlying Complaint") is attached as **Exhibit A**.

2.      The plaintiffs in the Underlying Action seek damages for injuries sustained by Darin McMahon on or about September 15, 2019, during a reality-based "force on force," simunitions training exercise designed to replicate a real life scenario involving a threat to the participants' safety.

3.      Defendant Cody Saylor ("Saylor"), through his company Primal Defense Training, LLC ("Primal Defense"), is alleged to have provided firearms instruction during the training exercise and to have acted as a role player instructor. Both are named defendants in the Underlying Action.

4.      The Underlying Complaint alleges that Saylor failed to "switch out" his real, live firearm during the training exercise for a non-lethal simunition training firearm, thereby causing injuries to Darin McMahon after Saylor discharged his live firearm, striking McMahon. Saylor was charged criminally for his alleged conduct.

5.      Defendant Rockwell Tactical Group, LLC ("RTG"), through its alleged owner, operator and principal, Defendant Jared Ross ("Ross"), is alleged to have organized, in part, the training exercise at issue. RTG and Ross are both named defendants in the Underlying Action.

6.      Prior to the incident on September 15, 2019, Underwriters issued Policy M121193975 to RTG, which has effective dates of December 5, 2018 to December 5, 2019 ("the Policy"). A true and correct copy of the Policy is attached as **Exhibit B**.

7.      Consistent with their obligation to act in good faith, Underwriters have been providing a defense to RTG and Ross under the Policy in the Underlying Action, pursuant to a reservation of rights.

8.      Consistent with their obligation to act in good faith, Underwriters have been providing defense and/or contributing to the defense of certain other defendants under the Policy, pursuant to a reservation of rights, namely Nathan Murr ("Murr") and Joshua Prince ("Prince"). Prince and Murr have claimed rights under the Policy based on allegations that they were "employees" of RTG.[1]

9.      In this action, Underwriters seek a judicial determination that there is no coverage under the Policy for Murr, Prince, Saylor and/or Primal Defense because none of these parties are the named insured under the Policy and none of these parties otherwise meet the requirements that would entitled them to insured status.

10.      As to RTG and Ross, and to the extent any or all of the parties referenced in paragraph 9 above are deemed "insureds" under the Policy, Underwriters also seek a judicial determination that there is no coverage under the Policy's Coverage A for general liability because, when the Policy is read as a whole, the allegations in the Underlying Action do not fall within the insuring agreement of that coverage.

11.      Furthermore, even if the allegations in the Underlying Action could fall within the Policy's Coverage A, coverage is excluded by Coverage A's "Professional Services" exclusion, which precludes coverage for injury arising out of the provision of services as a firearm instructor.

---

[1] Underwriters issued a separate insurance policy to Primal Defense under which they are providing Primal Defense and Saylor a defense to the Underlying Action, under a reservation of rights. Underwriters are in the process of filing a separate action for declaratory relief against Primal Defense and Saylor to determine Underwriters' rights and obligations, if any, under that separate policy. However, Mr. Saylor and Primal Defense have also claimed rights under the RTG Policy on the basis of allegations that Mr. Saylor was also an "employee" of RTG, and as such are named as defendants in this action for declaratory relief.

12.     Similarly, even if the allegations in the Underlying Action could fall within the Policy's Coverage A, coverage is also excluded by the Policy's "Simunitions" exclusion, which precludes coverage for injury arising out of any simunitions or similar training or exercise, such as the one at issue in the Underlying Action.

13.     As to the Policy's Coverage D for "firearms instructors professional liability," to the extent there is the potential for coverage under the insuring agreement of Coverage D for the allegations in the Underlying Action, Underwriters seek a judicial determination that coverage is excluded by the Policy's "Simunitions" exclusion, which per the terms of the Policy also applies to Coverage D and precludes coverage for liability arising out of any simunitions or similar training or exercise, such as the one at issue in the Underlying Action.

14.     Additionally, to the extent there is the potential for coverage under the insuring agreement of Coverage D for the allegations in the Underlying Action, Underwriters seek a judicial determination that coverage is excluded, at a minimum, for Mr. Saylor and Primal Defense, by operation of the Policy's "Dishonest or Criminal Acts" exclusion, which precludes coverage for, among other conduct, "criminal" acts, errors or omissions.

15.     Based on the grounds set forth above, Underwriters seek a declaration that they have no duty to defend or indemnify either RTG, Ross, Primal Defense, Saylor, Murr or Prince for the claims asserted against them in the Underlying Action and that to the extent any duty to defend did exist it has been extinguished, as evidenced by various deposition testimony and other discovery that has occurred in the Underlying Action. Thus, Underwriters also seek a declaratory judgment that Underwriters are entitled to withdraw the defense(s) they are currently providing.

## THE PARTIES

16.     Underwriters are individual foreign syndicates organized under the laws of the United Kingdom who underwrite insurance through managing agencies also organized under the laws of the United Kingdom, who in turn trade through the Lloyd's insurance market.

17.     Each of the syndicates principal place of business is located in the United Kingdom.  None of the syndicates have offices or other locations in the Commonwealth of Pennsylvania.

18.     Each of the syndicates share a proportion of the risk on the relevant insurance policy issued to RTG.  Each of the members of the syndicates' potential risk associated with Underlying Action exceeds $75,000.00.

19.     Upon information and belief, Rockwell Tactical Group, LLC ("RTG") is a Pennsylvania entity formed pursuant to the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Lancaster, Pennsylvania.

20.     Upon information and belief, Defendant Jared Ross ("Ross") is an adult individual and a citizen of the Commonwealth of Pennsylvania residing at 234 Springview Road, Carlisle, Pennsylvania. Mr. Ross is an owner and principal of RTG.

21.     Upon information and belief, Defendant Cody Saylor ("Saylor") is an adult individual and citizen of the Commonwealth of Pennsylvania residing at 2033 Pennsylvania Avenue, Allentown, Pennsylvania. Mr. Saylor is an owner and principal of Primal Defense Training, LLC ("Primal Defense").

22.     Upon information and belief, Primal Defense is an entity organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a corporate headquarters and

principal place of business located at 2061 Auden Lane, Allentown, Pennsylvania. Upon information and belief, it is owned and operated by Saylor.

23.     Upon information and belief, Defendant Nathan Murr ("Murr") is an adult individual and a citizen of the Commonwealth of Pennsylvania residing at 113 North Liberty Street, Lititz, Pennsylvania.

24.     Upon information and belief, Defendant Joshua Prince ("Prince") is an adult individual and a citizen of the Commonwealth of Pennsylvania residing at 646 Lenape Road, Bechtelsville, Pennsylvania.

25.     Upon information and belief, Defendants Darin McMahon ("Darin") and Tiffany McMahon ("Tiffany") (collectively, the "McMahons") are husband and wife adult individuals and citizens of Delaware residing at 16042 Fox Club Circle, Milton, Delaware. Darin McMahon and Tiffany McMahon are plaintiffs in the Underlying Action, and are here named as nominal defendants.

26.     Upon information and belief, Defendant Sean McMahon ("Sean") is an adult individual and a citizen of Delaware residing at 22190 Jefferson Road, Lincoln, Delaware. Sean McMahon is a plaintiff in the Underlying Action, and is named here as a nominal defendant.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because: (a) Underwriters are citizens of a foreign state (the United Kingdom) and the defendants are either citizens of Pennsylvania or Delaware; and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

28.     An actual justiciable controversy between Underwriters on the one hand and defendants on the other, exists within the meaning of 28 U.S.C. § 2201 regarding whether

Underwriters have a duty to defend or indemnify the defendants seeking coverage under the Policy with respect to the claims asserted in the Underlying Action, as more particularly described below.

29.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is appropriate in the Eastern District of Pennsylvania because jurisdiction is founded upon diversity of citizenship, and the events giving rise to the claims asserted in the Underlying Action occurred in the Eastern District of Pennsylvania. Moreover, the Underlying Action is currently pending in the Eastern District of Pennsylvania under Case 5:19-cv-05292-JMG.

## THE UNDERLYING ACTION

30.     Underwriters incorporate by reference the allegations of all preceding paragraphs as though pled here.

31.     The plaintiffs in the Underlying Action filed their original complaint on or about November 8, 2019.

32.     On or about November 21, 2019, the plaintiffs in the Underlying Action filed an Amended Complaint.

33.     On or about April 2, 2020, the plaintiffs in the Underlying Action sought leave of Court to amend their complaint again.

34.     On or about June 10, 2020, the plaintiffs in the Underlying Action filed a Second Amended Complaint.

35.     On or about December 3, 2020, the Court in the Underlying Action issued an order granting the plaintiffs' previous April 2, 2020 motion for leave to amend their complaint and ordered the clerk to file the plaintiffs' Second Amended Complaint (herein "Underlying Complaint") and deem the date filed as April 2, 2020.

36.     The Underlying Complaint alleges that on September 15, 2019, Darin attended a situational, reality-based "force on force" firearms training simulation at a training facility operated by Threat Assessment and Tactical Solutions Group, LLC ("TATS"). *See* **Exhibit A**, Second Am. Compl. at ¶¶ 4, 27, 55.

37.     TATS is also named as a defendant in the Underlying Action. *Id.* at ¶ 4.

38.     It is alleged that the TATS training facility is located on premises owned by TKD Properties, LLC ("TKD"). *Id.*

39.     TKD is also named as a defendant in the Underlying Action. *Id*. at ¶ 14.

40.     TATS is alleged to own and operate "a reality based training simulated force-on-force scenario tactical training facility" and to be a firearms and defensive measures training company that "provides training to prepare law enforcement officers, armed professionals and responsible citizens to survive imminent, real world threats." *Id.* at ¶¶ 4, 26.

41.     It is alleged that the training session at issue took place at TATS' "shoot-house" complex, and that the session involved "situational, reality based firearms training 'RBT' simulations." *Id.* at ¶ 55.

42.     Specifically, it is alleged that "RTG, TATS and the individual instructors were conducting RBT training simulations" that were separated into a morning and afternoon session. *Id.* at ¶ 63.

43.     The individual instructors, it is alleged, were Murr, Brandon Kehr ("Kehr"), Prince and Saylor. *Id.* at ¶ 111.

44.     The Underlying Complaint alleges that Darin was participating in the training as part of a "recreational, weekend-long trip." *Id.* at ¶ 55.

8

45.     The Underlying Complaint alleges that RTG rented the "shoot-house" facility from TATS for the training and that the session was organized by Jared Ross from RTG. *Id.* at ¶¶ 56, 97 and 135.

46.     RTG is alleged to be a firearms training company whose founder and owner is Ross. *Id.* at ¶ 22.

47.     RTG is alleged to provide weapons training in which participants use modified guns manufactured by Ultimate Training Munitions, Inc. ("UTM") that are chambered to shoot paint or chalk markings. *Id.* at ¶¶ 38-40. These firearms are typically identified by a brightly colored marking on the gun. *Id.* at ¶ 39.

48.     The Underlying Complaint states that "Ross was not present for the weekend at TATS, but allowed TATS, Murr, Prince, Saylor, Kehr and the customers, including Darin McMahon, to use his UTM guns for training." *Id.* at ¶ 57.

49.     The Underlying Complaint alleges that UTM guns refer to "Ultimate Training Munitions," "the manufacturer of conversion kits created to allow real firearms to shoot paint-filled 'man marking rounds' and said conversion kits were utilized by RTG in their force-on-force training." *Id.* at ¶ 38.

50.     The Underlying Complaint alleges that Murr acted as the "lead instructor" at the relevant training exercise. *Id.* at ¶ 123.

51.     The Underlying Complaint also alleges that Murr apprised the group of attendees "that he is in the business of selling accessories for firearms and promoted [his business] True North Concepts, LLC." *Id.* at ¶ 73.

52.     It is alleged that the "force on force" scenario at issue was created by role players. *Id.* at ¶¶ 32, 75.

53.     The Underlying Complaint alleges that the "aggressor role players instructors" for the training "were shooting range instructors Josh Prince from Civil Rights Defense Firm and Cody Saylor from Primal." *Id.* at ¶ 65.

54.     The Underlying Complaint alleges that RTG, through Ross, "partnered with Saylor and Primal Defense to use Saylor as an instructor at TATS." *Id.* at ¶ 125.

55.     It further alleges that "Saylor was a subcontractor of RTG" at the relevant times and "was acting on behalf of RTG and/or an independent contractor for RTG with Primal Defense." *Id.* at ¶ 86.

56.     It also alleged that RTG "partnered" with Prince, a lawyer, and his affiliated law firms, "to instruct participants on the legal ramifications of using a weapon in self-defense scenarios." *Id.* at ¶ 124. Specifically, it is alleged that, at the session, Prince "gave legal advice to all," in relation to what to do if one was ever involved in a "self-defense justification shooting" and were questioned by police. *Id.* at ¶ 71. Prince is an employee of Prince Law Offices, P.C. and the owner of Civil Rights Defense Firm, P.C.

57.     The Underlying Complaint alleges that during the session at issue Darin McMahon entered the TATS shoot-house to participate in the simulations. *Id.* at ¶ 55.

58.     The Underlying Complaint alleges that each attendee and participant were supposed to be frisked, but that this did not take place. *Id.* at ¶ 66.

59.     It also alleges that no security was employed to ensure that live round firearms were not brought into the facility. *Id.* at ¶ 67.

60.     The Underlying Complaint alleges that the instructor role players, Saylor and Prince, did not frisk each other prior to the incident. *Id.* at ¶ 75.

10

61.     It is alleged that each attendee was to enter the shoot-house and react to the force-on-force scenario exhibited by Prince and Saylor. *Id.* at ¶ 76.

62.     Prince, Saylor and McMahon were to have been equipped with the modified UTM firearm. *Id.* at ¶ 76.

63.     The Underlying Complaint alleges that Saylor mistakenly did not "switch out" his live Glock firearm, which was not detected because he was not frisked by Prince and Murr. *Id.*

64.     It is alleged that Saylor shot McMahon with a live round. *Id.* at ¶ 78.

65.     In Count I of the Underlying Complaint, Darin sets forth a cause of action for "negligence" against Ross for allegedly breaching a duty to McMahon by permitting Saylor, Kehr, Murr and Prince to engage in RBT force on force training negligently, recklessly and carelessly, thereby causing Darin injuries. *Id.* at ¶¶ 119-132.

66.     In Count II of the Underlying Complaint, Darin sets forth a cause of action for "negligence" against RTG for allegedly breaching a duty to ensure proper training and safety protocols and alleging that RTG is vicariously liable for the acts or omissions of others. *Id.* at ¶¶ 133-142.

67.     In Count V of the Underlying Complaint, Darin sets forth a cause of action for "negligence" against Saylor alleging, *inter alia*, he breached a duty to McMahon by failing to "ensure he did not use a real weapon during the force-on-force scenario training." *Id.* at ¶¶ 164-178.

68.     In Count VI of the Underlying Complaint, Darin sets forth a cause of action for "negligence per se" against Saylor alleging, *inter alia*, he is civilly liable on account of criminal charges brought against him and his "violation of . . . criminal statutes" arising from his conduct at the relevant force-on-force training session. *Id.* at ¶¶ 179-188.

69.     In Count VII of Underlying Complaint, Darin sets forth a cause of action for "negligence" against Primal Defense alleging, *inter alia*, it is vicariously liable for the acts or omissions of Saylor. *Id.* at ¶¶ 189-201.

70.     In Count VIII of the Underlying Complaint, Darin sets forth a cause of action for "negligence" against Murr alleging, *inter alia*, he breached a duty to McMahon by failing to "ensure that Saylor did not use a real weapon during the force-on-force scenario training." *Id.* at ¶¶ 202-215.

71.     In Count IX of the Underlying Complaint, Darin sets forth a cause of action for "negligence" against Prince alleging, *inter alia*, he breached a duty to McMahon by failing to "ensure that Saylor did not use a real weapon during the force-on-force scenario training." *Id.* at ¶¶ 216-236.

72.     In Count XIII of the Underlying Complaint, Sean, sets forth a cause of action for "negligent infliction of emotional distress" against all defendants, alleging, *inter alia*, that the conduct of the defendants, in part described above, caused him severe psychiatric injuries and emotional distress. *Id.* at ¶¶ 290-295.

73.     In Count XIV of the Underlying Complaint, Tiffany, sets forth a cause of action for "loss of consortium" against all defendants, alleging, *inter alia*, that the conduct of the defendants, in part described above, has caused her to incur medical costs and to expend medical care to her spouse which will continue into the future, as well as deprived her a loss of companionship and consortium of her husband. *Id.* at ¶¶ 296-298.

74.     RTG and Ross tendered the Underlying Action to Underwriters for defense and indemnity, and Underwriters agreed to defend RTG and Ross subject to a full and complete reservation of rights, including reserving rights to later withdraw the defense if it were to be

determined that the Underlying Action did not give rise to a potential for coverage under Underwriters' Policy.

75.     Murr, through counsel, also tendered the Underlying Action to Underwriters for defense and indemnity, claiming rights under the Policy as an alleged employee of RTG.

76.     Underwriters requested materials and information from Murr supporting his claim, particularly because the information known to Underwriters at the time suggested that Murr was not an employee of RTG.

77.     Murr did not provide any documents or other information to Underwriters illustrating he was an employee of RTG, despite the requests.

78.     Out of an abundance of caution, Underwriters agreed to defend Murr subject to a reservation of rights, including a reserving rights to later withdraw the defense if it were to be determined that the Underlying Action did not give rise to a potential for coverage under Underwriters' Policy.

79.     Prince, through counsel, also tendered the Underlying Action to Underwriters for defense and indemnity, claiming rights under the Policy as an alleged employee of RTG.

80.     Underwriters requested materials and information from Prince supporting his claim, particularly because the information known to Underwriters at the time suggested that Prince was not an employee of RTG.

81.     Prince did not provide any documents or other information to Underwriters illustrating he was an employee of RTG, despite the requests.

82.     Out of an abundance of caution, Underwriters agreed to participate in the defense of Prince with two other insurance carriers, subject to a reservation of rights, including a

reserving rights to later withdraw the defense if it were to be determined that the Underlying

Action did not give rise to a potential for coverage under Underwriters' Policy.

83.     Saylor (and Primal Defense), through counsel, also tendered the Underlying

Action to Underwriters for defense and indemnity, claiming rights under the Policy as an alleged

employee of RTG, as well as under a separate insurance policy issued to Saylor's company,

Primal Defense.

84.     Underwriters requested materials and information from Saylor supporting his

claim that he was an employee of RTG, particularly because the information known to

Underwriters at the time suggested that Saylor was not an employee of RTG.

85.     Saylor did not provide any documents or other information to Underwriters

illustrating he was an employee of RTG, despite the requests.

86.     Out of an abundance of caution, Underwriters agreed to defend Saylor and Primal

Defense under the separate Policy issued to Primal Defense, under a reservation of rights, and

also reserved their rights as it related to the Policy issued to RTG.

87.     In addition to the allegations in the Underlying Complaint, certain facts have

developed in the Underlying Action through discovery, including deposition testimony.

88.     Specifically, Ross was deposed in the Underlying Action. Notwithstanding

Murr's characterization of the relationship, Ross testified that Murr was not an employee of RTG

at the time of the relevant training exercise.

89.     Ross also testified that neither Prince nor Saylor were employees of RTG at the

time of the relevant training exercise.

90.     Prince was also deposed. His testimony indicates that Prince was not an employee

of RTG within the meaning of the Policy at the time of the relevant training exercise.

**THE POLICY**

91.     The Policy issued to RTG is entitled a Firearms Instructor *Plus* Liability Insurance policy, and as outlined in paragraph 6 above, bears Policy Coverage No. M121193975 with effective dates of December 5, 2018 to December 5, 2019.  *See* **Exhibit B**.

92.     The Policy is subject to per occurrence and aggregate limits of liability, e.g., $1,000,000per occurrence/$2,000,000 in the aggregate. *Id.*

93.     The Policy lists "Rockwell Tactical Group LLC" as the Named Insured.

94.     Under the Policy the words "you" and "your" refer to the Named Insured. *Id.* at Form NRA (Section 12) 7/15, p. 1 of 15.

95.     Under the Policy, "[t]he word 'insured' means any person or organization qualifying as such under [Section] II. WHO IS AN INSURED." *Id.*

96.     In relevant part, Section II. WHO IS AN INSURED states as follows:

**B.** Each of the following is also an insured:

    **1.** Your "employee", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business of a "Firearms Instructor". However, none of these "employees" is an insured for:

        **a.** "bodily injury" or "personal injury"

            **(1)** to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

            **(2)** to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **a.(1)** above;

**(3)** for which there is any obligation to share damages
with or repay someone else who must pay damages
because of the injury described in paragraphs **a.(1)**
or **(2)** above; or

**(4)** arising out of his or her providing or failing to provide
professional health care services.

**Exhibit B**, Form NRA (Section 12) 7/15, p. 8 of 15.

97.     The Policy defines the term "employee" as follows: "G. 'Employee' includes a
'leased worker'. 'Employee does not include a 'temporary worker.'" *Id.* at p. 12 of 15. The
Policy defines "leased worker" as "a person leased to you by a labor leasing firm under an
agreement between you and the labor leasing firm, to perform duties related to the conduct of
your business." "Leased worker" does not include a "temporary worker"." *Id.* at p. 13 of 15. The
Policy defines "temporary worker" as "a person who is furnished to you to substitute for a
permanent 'employee' on leave or to meet seasonal or short-term workload conditions." *Id.* at p.
14 of 15.

98.     The Policy's insuring agreement under Coverage A provides that Underwriters
"will pay those sums that the insured becomes legally obligated to pay as damages because of
'bodily injury' or 'property damage' to which this insurance applies." **Exhibit B**, Form NRA
(Section 12) 7/15, p. 1 of 15.  The insuring agreement further provides that Underwriters "have
the right and duty to defend the insured against any 'suit' seeking those damages[,]" but that
Underwriters "will have no duty to defend the insured against any 'suit' seeking damages for
'bodily injury' or 'property damage' to which this insurance does not apply." *Id.*

99.     In relevant part, the Policy provides coverage for "bodily injury" that is caused by
an "occurrence" that takes place in the "coverage territory" during the policy period. *Id.*

16

100.    "Bodily injury" is defined to mean "sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at p. 12 of 15.

101.    The Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at p. 13 of 15.

102.    The Policy's Coverage A, however, contains the following exclusion to coverage:

This insurance does not apply to:

**o. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering or failure to render professional services as a "firearms instructor".

**Exhibit B**, Form NRA (Section 12) 7/15, p. 4 of 15.

103.    The Policy's Coverage A also contains the following additional exclusion:

**q. Simunitions[2]**

"Bodily injury" or "property damage" arising out of any simmunitions or similar training or exercise.

**Exhibit B**, Form NRA (Section 12) 7/15, p. 4 of 15.

104.    Exclusion q. for Simunitions is amended by the "AMENDMENT TO SIMUNITIONS EXCLUSION, as follows:

This endorsement modifies insurance provided under the following:

---

[2] The Policy uses the spelling "Simunitions" and "Simmunitions" interchangeably. For clarity this Complaint uses "Simunitions."

**FIREARMS INSTRUCTOR PLUS LIABILITY INSURANCE**

I.       **SECTION I. COMMERCIAL GENERAL LIABILITY COVERAGE A. "BODILY INJURY" AND "PROPERTY DAMAGE" LIABILITY is amended as shown below.**

**Exclusion 2.q. Simunitions is deleted and replaced by the following:**

**q. Simunitions**

"Bodily injury" or "property damage" arising out of any simunitions or similar training or exercise. This exclusion does not apply to any NRA Approved UTM Target Shooting products utilized by a UTM Certified Instructor while engaged in NRA approved course instruction.

*See* **Exhibit B**, Form MPL0001 08 16, p. 1 of 1.

105.     The Policy's insuring agreement under Coverage D provides that Underwriters will "pay those sums you are legally obligated to pay as damages resulting from a 'wrongful act' arising out of the conduct of your services as 'firearms instructor.'" **Exhibit B**, Form NRA (SECTION 12) 7/15, p. 6 of 15.

106.     The "'wrongful act' must take place within the 'coverage territory' during the policy period." *Id.* at p. 6 of 15.

107.     The term "wrongful act" is defined as "any negligent act, error, misstatement, misleading statement or omission in the performing or failing to perform services, as a "firearms instructor." *Id.* at p. 14 of 15.

108.     The term "firearm instructor" is defined as "a person or company in the business of training individuals in firearms or defense related training, education, instruction and coaching, and includes Range Safety Officers." *Id.* at p. 12 of 15.

109.     Coverage D includes, however, the following exclusion to coverage:

This insurance does not apply to:

    **f.  Dishonest or Criminal Acts**

        Dishonest, fraudulent, criminal, illegal, intentional, or
malicious act, error or omission.

**Exhibit B**, Form NRA (Section 12) 7/15, p. 6 of 15.

110.    The Policy Coverage D also contains the following additional exclusion:

    **l. Simunitions**

    Any liability arising out of any
simmunitions or similar training or exercise.

**Exhibit B**, Form NRA (Section 12) 7/15, p. 4 of 15.

111.    However, like with Coverage A, Exclusion l. for Simunitions is amended by the

"AMENDMENT TO SIMUNITIONS EXCLUSION, as follows:

This endorsement modifies insurance provided under the following:

**FIREARMS INSTRUCTOR PLUS LIABILITY INSURANCE**

\* \* \*

II.    **SECTION I. COMMERCIAL GENERAL LIABILITY COVERAGE D. FIREARMS INSTRUCTORS
PROFESSIONAL LIABILITY is amended as shown below.**

    **Exclusion 2.l. Simunitions is deleted and replaced by the following:**

    **m. Simunitions**
Any liability arising out of any simunitions or similar training or exercise. This exclusion does not apply
to any NRA Approved UTM <u>Target Shooting</u> products utilized by a UTM Certified Instructor while
engaged in NRA approved course instruction.

    **Exhibit B**, Form MPL0001 08 16, p. 1 of 1.

## COUNT ONE

### (Declaratory Relief – Neither Murr, Prince, Saylor nor Primal Defense are Insureds under the Policy

112.    Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

113.    The only Named Insured listed on the Policy is Rockwell Tactical Group LLC.

114.    Neither Murr, Prince, Saylor nor Primal Defense are Named Insureds under the Policy.

115.    Under the relevant sections of the Policy's WHO IS AN INSURED provisions, the only way for either Murr, Prince, Saylor or Primal Defense to be considered "insureds" under the Policy is if they met the definition of an "employee" as it relates to RTG.

116.    Neither Murr, Prince, Saylor nor Primal Defense meet the Policy's definition of "employee" as it relates to RTG.

117.    As a result, neither Murr, Prince, Saylor nor Primal Defense are "insureds" under the Policy.

118.    Underwriters are thus entitled to a declaration that they have no duty to defend or indemnify those defendants against the Underlying Action under the Policy and that they may, therefore, withdraw the defense currently being provided to those Defendants.

## COUNT TWO

### (Declaratory Relief – No Coverage A Damages Alleged and/or Same are Excluded by Professional Services Exclusion)

119.    Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

120.    For coverage to exist under Coverage A of the Policy, there must be damages because of "bodily injury" or "property damage" from an "occurrence."

121.    The Underlying Complaint does not allege injury to property and therefore does not allege "property damage."

122.    As described above, the Underlying Complaint asserts that Darin suffered bodily injuries as a result of alleged negligent acts, errors or omissions on the part of RTG, Ross, Saylor, Primal Defense, Murr and/or Prince while acting as firearms instructors at the training event at issue.  Under the Policy's terms and definitions, and when the Policy is read as a whole, none of these allegations constitute injury from an "occurrence" within the meaning of the Policy.

123.    As the Underlying Complaint does not seek damages because of injury from an "occurrence," there can be no coverage under the Policy's Coverage A.

124.    Additionally, the Policy's "Professional Services" exclusion precludes coverage for "bodily injury" or "property damage" arising out of the rendering or failure to render professional services as a "firearms instructor."

125.    The Underlying Complaint alleges Darin suffered injuries as a result of alleged negligent acts, errors or omissions on the part of RTG, Ross, Saylor, Primal Defense, Murr and/or Prince while acting as firearms instructors at the training event at issue.

126.    These injuries thus arise out of the rendering or failure to render professional services as a "firearms instructor."

127.    Therefore, even if the Complaint in the Underlying Action alleged injury from an "occurrence," coverage would nonetheless be excluded under Coverage A by the Professional Services exclusion.

21

128.     Underwriters are thus entitled to a declaration that they have no duty to defend or indemnify Defendants against the Underlying Action under the Policy's Coverage A and that they may, therefore, withdraw the defense currently being provided to the Defendants.

## COUNT THREE

## (Declaratory Relief – To the Extent Coverage A Damages Exist, Same are also Excluded by the Simunitions Exclusion)

129.     Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

130.     Under Coverage A, the Policy's "Simunitions Exclusion," as amended, precludes coverage for "bodily injury" or "property damage" arising out of any simunitions or similar training or exercise.

131.     Simunitions are non-lethal training ammunition that create marking rounds for, among other things, situational, reality-based training simulations to simulate the effects of live fire, such as the training session at issue here.

132.     The only exception under the exclusion is where the injury or damage involves NRA Approved UTM Target Shooting products utilized by a UTM Certified Instructor while engaged in NRA approved course instruction.

133.     The Underlying Complaint alleges that Darin was injured when he attended a situational, reality-based "force on force" firearms training simulation that involved non-lethal training ammunition.

134.     The Underlying Complaint, as well as facts established in discovery in the Underlying Action, make clear that the training exercise attended by Darin did not involve NRA Approved UTM Target Shooting products utilized by a UTM Certified Instructor while engaged in NRA approved course instruction.

135. Therefore, even if the Complaint in the Underlying Action alleged "bodily injury" or "property damage" from an "occurrence" within the meaning of Coverage A, coverage would nonetheless be excluded under Coverage A by the Simunitions Exclusion, as amended.

136. Underwriters are thus entitled to a declaration that they have no duty to defend or indemnify Defendants against the Underlying Action under the Policy's Coverage A and that they may, therefore, withdraw the defense currently being provided to the Defendants.

## COUNT FOUR

### (Declaratory Relief –Any Potential Coverage under Coverage D is Excluded by the Dishonest or Criminal Acts Exclusion)

137. Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

138. Under Coverage D, the Policy's "Dishonest or Criminal Acts" exclusion precludes coverage for any "[d]ishonest, fraudulent, criminal, illegal, intentional, or malicious act, error or omission."

139. Saylor has been charged criminally for his conduct relating to the injuries sustained by Darin at the relevant training exercise.

140. The plaintiffs' injuries in the Underlying Action arise from Saylor's conduct.

141. Therefore, insofar as there is the potential for Coverage under Coverage D of the Policy, coverage would be excluded by operation "Dishonest or Criminal Acts" exclusion, at a minimum for Saylor and Primal Defense.

142. Underwriters are thus entitled to a declaration that they have no duty to defend or indemnify, at a minimum, Saylor or Primal Defense against the Underlying Action under the Policy's Coverage D.

**COUNT FIVE**

**(Declaratory Relief –Any Potential Coverage under Coverage D is Excluded by the Simunitions Exclusion)**

143.    Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

144.    Under Coverage D, the Policy's "Simunitions Exclusion," as amended, precludes coverage for "any liability arising out of any simunitions or similar training or exercise."

145.    Simunitions are non-lethal training ammunition that create marking rounds for, among other things, situational, reality-based training simulations to simulate the effects of live fire.

146.    The only exception under the exclusion is where the injury or damage involves NRA Approved UTM <u>Target Shooting</u> products utilized by a UTM Certified Instructor while engaged in NRA approved course instruction.

147.    The Underlying Complaint alleges that Darin was injured when he attended a situational, reality-based "force on force" firearms training simulation that involved non-lethal training ammunition.

148.    The Underlying Complaint, as well as facts established in discovery in the Underlying Action, makes clear that the training exercise attended by Darin McMahon did not involve NRA Approved UTM <u>Target Shooting</u> products utilized by a UTM Certified Instructor while engaged in NRA approved course instruction.

149.    Therefore, insofar as there is the potential for coverage under Coverage D of the Policy, coverage would nonetheless be excluded under Coverage D by the Simunitions Exclusion, as amended.

150.    Underwriters are thus entitled to a declaration that they have no duty to defend or

indemnify Defendants against the Underlying Action under the Policy's Coverage D and that they may, therefore, withdraw the defense currently being provided to the Defendants.

## COUNT SIX

### (Declaratory Relief – No Coverage for Punitive Damages

151.   Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

152.   The Underlying Complaint seeks punitive damages directly against the defendants in the Underlying Action.

153.   Directly assessed punitive damages are not insurable in Pennsylvania.

154.   As a result, to the extent punitive damages are awarded in the Underlying Action, they would not be covered by the Policy.

155.   Underwriters are thus entitled to a declaration that in the unlikely event that coverage exists under the Policy, there is no indemnification obligation for any punitive damages awarded.

WHEREFORE, Underwriters pray for judgment against Defendants as follows:

1.   For a declaration that, under the Policy, there is no potential coverage for, nor a duty to defend or indemnify, the claims asserted in the Underlying Action, or alternatively, that any duty to defend that might have existed has been extinguished.

2.   For a declaration that Underwriters are entitled to withdraw the defense they are currently providing to RTG, Ross, Murr, and Prince under the Policy.

3.   For a declaration that there is  no coverage under the Policy for punitive damages.

4.   For such other and further relief as the Court deems appropriate.

DATED:  March 16, 2021   Respectfully submitted,

         REGER RIZZO & DARNALL LLP

       By: <u>/s/ Michael J. Needleman, Esq.</u>
         Michael J. Needleman, Esquire
         2929 Arch Street
         Philadelphia, PA 19104
         (215) 495-6500
         mneedleman@regerlaw.com

         and

         Matthew A. Ferrigno, Esq.
         PAUL FRANK + COLLINS P.C.
         One Church Street
         P.O. Box 1307
         Burlington, VT 05402
         (802) 658-2311
         mferrigno@pfclaw.com

         *Pro Hac Vice application to be filed*

         Attorneys for Plaintiff
         CERTAIN UNDERWRITERS
         AT LLOYD'S, LONDON
         SUBSCRIBING TO POLICY    :
         M121193975